**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| EDUARDO NEGRETE AND GERVASIO NEGRETE,<br><br>                Plaintiffs,<br><br>    v.<br><br>CITIBANK, N.A.,<br><br>                Defendant. | No. 15-cv-7250 (RWS)<br>**ORAL ARGUMENT REQUESTED**<br>**OCTOBER 27, 2016 AT 12:00PM** |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF**
**CITIBANK'S MOTION TO DISMISS THE AMENDED COMPLAINT**

FRESHFIELDS BRUCKHAUS DERINGER US LLP
Marshall H. Fishman
Samuel J. Rubin
601 Lexington Avenue
New York, New York 10022
Telephone:  (212) 277-4000
Facsimile:  (212) 277-4001

*Attorneys for Citibank, N.A.*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES .................................................................................. ii

PRELIMINARY STATEMENT ........................................................................... 1

ARGUMENT ....................................................................................................... 3

   I. THE FRAUD CLAIMS REMAIN DEFICIENT ......................................... 3

   II. THE BREACH OF CONTRACT CLAIMS REMAIN DEFICIENT ............. 5

   III. THE MARGIN CALL CLAIM IS BARRED BY THE ISDAs .................. 8

CONCLUSION .................................................................................................... 10

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re 114 Tenth Ave. Assoc. Inc.*,
   441 B.R. 416 (S.D.N.Y. 2010)............................................................................................8

*Barclays Bank Mexico, S.A. v. URBI*,
   40 Misc. 3d 1212(A) (Sup. Ct. N.Y. Cty. 2013), *aff'd*, 114 A.D.3d 479 (1st
   Dep't 2014) ......................................................................................................................7

*Geman v. Sec. & Exch. Comm'n*,
   334 F.3d 1183 (10th Cir. 2003) .......................................................................................6

*Harris v. Provident Life & Accident Ins.*,
   310 F.3d 73 (2d Cir. 2002)...............................................................................................8

*Highland Capital Mgmt., L.P. v. Schneider*,
   533 F. Supp. 2d 345 (S.D.N.Y. 2008)..............................................................................5

*Highland CDO Opportunity Fund v. Citibank*,
   No. 12-cv-2727 (NRB), 2016 WL 1267781 (S.D.N.Y. Mar. 30, 2016)...................9

*Highland CDO Opportunity Master Fund v. Citibank*,
   No. 12-cv-2827(NRB), 2013 WL 1191895 (S.D.N.Y. Mar. 22, 2013)....................9

*Mills v. Polar Molecular Corp.*,
   12 F.3d 1170 (2d Cir. 1993).............................................................................................3

*Sebastian Hldgs., Inc. v. Deutsche Bank AG*,
   78 A.D.3d 446 (1st Dep't 2010) .......................................................................................4

*Strobe v. Netherland Co.*,
   245 A.D. 573 (4th Dep't 1935)........................................................................................8

*United States v. Bank of New York Mellon*,
   941 F. Supp. 2d 438 (S.D.N.Y. 2013).............................................................................3

*United States v. McKeon*,
   738 F.2d 26 (2d Cir. 1984)...............................................................................................5

*VCG Special Opp. Master Fund Ltd. v. Citibank, N.A.*,
   No. 08 Civ. 1563 (BSJ), 2009 WL 311362 (S.D.N.Y. Jan. 29, 2009)................................8, 9

*Wachovia Bank, N.A. v. VCG Special Opportunities Master Fund, Ltd.*,
   661 F.3d 164 (2d Cir. 2011).............................................................................................7

*Wolff v. Rare Medium, Inc.*,
    210 F. Supp. 2d 490 (S.D.N.Y. 2002), *aff'd*, 65 F. App'x 736 (2d Cir. 2003)....................7, 8

**Other Authorities**

Fed. R. Civ. P. 8.................................................................................................................1

Fed. R. Civ. P. 9.............................................................................................................1, 3

Fed. R. Civ. P. 12...............................................................................................................1

Citi respectfully submits this reply memorandum of law in further support of its motion, pursuant to Federal Rules of Civil Procedure 8(a), 9(b) and 12(b)(6), to dismiss the Amended Complaint.[1]

## PRELIMINARY STATEMENT

As if the Dismissal Decision did not exist, Plaintiffs again resort to their false premise — contrary to the governing ISDAs — that Citi had an obligation of "best execution" and that Citi was not entitled to earn a markup on its counterparty trading with Plaintiffs.  This Court has already rejected that argument, finding instead that, pursuant to the ISDAs, each counterparty traded as a principal for its own benefit and was entitled to earn a profit.

Against that backdrop (set out fully in the Opening Brief), the Opposition is most significant for what it concedes.  The Opposition's primary example of Plaintiffs' trading activity (prominently block-quoted in Plaintiffs' preliminary statement), was an order that was executed exactly as requested.  *See* Opp. Br. at 1 (alleging that "Eduardo Negrete placed an order . . . [at] 1.4785 or better" and admitting that "Citibank filled the order at 1.4785" (emphasis added)).  Accordingly, the Opposition concedes that Plaintiffs have received "exactly what they bargained for under the ISDAs."  Dismissal Decision at *6.

The Opposition also concedes that there is no provision in the ISDAs that creates a fiduciary or brokerage relationship or any other obligation to execute orders at a particular price or the "best available price."  Plaintiffs' persistent attempt to save their fraud claim by re-casting Citi as their fiduciary, their broker or an order-taker executing trade instructions fails because the

---

[1]     Capitalized terms not otherwise defined herein shall have the meanings set forth in Defendant's memorandum of law in support of its motion to dismiss the Amended Complaint ("Opening Brief" or "Opening Br.") filed on July 27, 2016 at Dkt. No. 58.  Plaintiffs' memorandum of law in opposition thereto, filed on August 31, 2016 at Dkt. No. 69 is referred to herein as the "Opposition" or "Opp. Br."

governing ISDAs flatly contradict those characterizations of the parties' relationship, as already held in the Dismissal Decision.

Moreover, the Opposition admits that "there is no bar to Citi making a profit" (Opp. Br. at 2), which is a critical concession because Citi was entitled to profit by way of a markup. As such, this concession crystallizes the underlying implausibility of Plaintiffs' allegations that, notwithstanding their sophistication, the Negretes truly thought Citi was trading billions of dollars completely free of charge.

The Opposition also ignores the Court's prior finding that, under the ISDAs, all "Transactions are entered into in reliance on the fact that this Master Agreement and all Confirmations form a single agreement between the parties (collectively referred to as this 'Agreement'), and the parties would not otherwise enter into any Transactions." Dismissal Decision at *2. Plaintiffs' statement that the trade confirmations are "unnecessary with respect to FX transactions" (Opp. Br. at 10) contravenes the Dismissal Decision.

Finally, as Plaintiffs tried (and failed) to do in opposing the motion to dismiss the Original Complaint, the Opposition again seeks to repackage the relief Plaintiffs seek as something other than "lost profits" (which it concedes are barred by New York's "out-of-pocket" rule and the limitations of liability in the governing ISDAs). But there is no "confusion" as the Opposition suggests (*see id.*) about the substantively unchanged nature of the damages Plaintiffs seek. As this Court held, "[a]lthough the Plaintiffs seek to re-characterize their damages claims for 'lost profits' and 'lost opportunity to profit' as actual damages, in reality, the complaint only seeks lost profits." Dismissal Decision at *9. The same is true here.

As set forth in the Opening Brief, the Amended Complaint should be dismissed, in its entirety, with prejudice, and without leave to amend.

2

## ARGUMENT

### I.
### THE FRAUD CLAIMS REMAIN DEFICIENT

The Opposition attempts to create a misimpression that the Court dismissed the Original Complaint only for lack of specificity under Federal Rule 9(b).  *See, e.g.*, Opp. Br. at 1, 2, 16. That is untrue.  As set forth in the Opening Brief, in addition to finding numerous pleading deficiencies, the Court also held that: "Even if Plaintiffs could provide examples of the alleged conduct and meet the particularity burden of Rule 9(b), it has not been established that the failure to disclose a markup constitutes a common law fraud claim."  Dismissal Decision at *6.[2]

Nevertheless, the Opposition ignores the Court's merits analysis and, instead, doubles down on the same argument that Plaintiffs "overpaid for the FX trades that Citi executed above the agreed-upon price because of Citi's omissions."  *See* Opp. Br. at 18.  But, as recognized by this Court, Citi and Plaintiffs were "counterparties under the ISDAs" and, therefore, Citi was "not prohibited from profiting on its trading by way of a markup," nor was it "required to advise trading counterparties, to whom it owes no fiduciary duty, how it profits on a trade."  Dismissal Decision at *6 (emphases added); *see also United States v. Bank of New York Mellon*, 941 F. Supp. 2d 438, 482-83 (S.D.N.Y. 2013) ("commercial merchants generally are under no obligation to disclose their underlying costs or profits.").

The Opposition also fails to address the Court's independently dispositive findings that Plaintiffs failed to plead the essential elements of reliance, causation and scienter.  The Court found that "Plaintiffs were a sophisticated counterparty with access to vast amounts of

---

[2]    The Amended Complaint remains inadequately particularized under Federal Rule 9(b).  For all of its transactional detail, it still fails to link any allegedly fraudulent statement to any particular transaction or the terms of any confirmation.  Opening Br. at § I; Dismissal Decision at *10; *see also Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993) ("The fraud allegations . . . fail because, even though these plaintiffs have served an original and two amended complaints, they still have not linked the alleged fraudulent statements to particular Directors.").

information about the FX markets, which contradicts their claim of reliance" (Dismissal Decision at *8) and that as "part of Plaintiffs' billion dollar FX trading, Plaintiffs followed their FX positions in real-time with up-to-the-second access to market information." *Id*.[3]  Similarly, the Court found that the "doctrine of loss causation applies to common law fraud claims" (*id.* at *9) and, accordingly, Plaintiffs' failure to link any allegedly fraudulent misrepresentation to any particular transaction negated the causation element of their fraud claims.   And Plaintiffs' allegations concerning a purported "failure to disclose" markups or purported misrepresentations to induce Plaintiffs to "continue to engage in business" each are insufficient bases for scienter as set forth in the Dismissal Decision (*id.* at *7) and Opening Brief (Opening Br. at § I).[4]

Finally, the Opposition's accusation that Citi has "confused Plaintiffs' allegations about how Plaintiffs were damaged" (Opp. Br. at 10), is belied by Plaintiffs' own pleadings.   The Original Complaint claimed that: (i) "Plaintiffs lost the opportunity to profit from unexecuted or partially executed trades;" (ii) "Plaintiffs were not able to profit based on hundreds of unexecuted trades;" and (iii) Plaintiffs are entitled to damages in "the amount of profit Plaintiffs failed to realize from unexecuted and partially executed trades."  *See* Dkt. No. 1 at ¶¶ 32, 71, 72

---

[3]     *See also Sebastian Hldgs., Inc. v. Deutsche Bank AG*, 78 A.D.3d 446, 447 (1st Dep't 2010) ("Plaintiff's alleged reliance on defendant's superior knowledge and expertise in connection with its foreign exchange trading account ignores the reality that the parties engaged in arm's-length transactions pursuant to contracts between sophisticated business entities that do not give rise to fiduciary duties").

[4]     Plaintiffs' continued reliance on the May 20, 2015 disclosure notice (*see* Opp. Br. at 3-5) remains highly misleading.  The Opposition glosses over the Court's findings that the disclosure notice did not admit any "wrongful practices" with regard to markups (as the Amended Complaint incorrectly alleges) and "the disclosure notice did not explicitly state that Defendant's FX trading practices were 'wrongful practices.'"  Dismissal Decision at *7.  Nor did it require implementation of a "compliance program" with regard to markups as the Amended Complaint (and the Opposition) misstates.  As this Court observed in the Dismissal Decision, the "compliance program" pertained only to detecting "attempts to fix the price of the Euro-U.S. Dollar currency pair trade."  Dismissal Decision at *3.  Similarly, the Opposition's claims of purported misrepresentations attributable to Citi personnel are inapposite because none of those alleged statements could apply to executed orders (the primary focus of the Opposition).  *See, e.g.*, Opp. Br. at 5 (alleging circumstances where Plaintiffs purportedly complained of "orders not being filled" (emphasis added)).

(emphasis added).  Plaintiffs want a do-over and now studiously avoid using the words "lost profit" in the Amended Complaint.  No amount of sophistry changes the nature of the damages sought (Am. Compl. at ¶¶ 100, 152-53, 158-59) which remain speculative lost profits as originally pleaded.  Plaintiffs remain bound by their prior pleading:

> The law is quite clear that such pleadings constitute the admissions of a party opponent and are admissible in the case in which they were originally filed as well as in any subsequent litigation involving that party.  <u>A party thus cannot advance one version of the facts in its pleadings, conclude that its interests would be better served by a different version, and amend its pleadings to incorporate that version, safe in the belief that the trier of fact will never learn of the change in stories</u>.

*United States v. McKeon*, 738 F.2d 26, 31 (2d Cir. 1984) (emphasis added).  Plaintiffs' fraud claims alleging only lost profits are barred by New York's "out-of-pocket" rule.  *See Highland Capital Mgmt., L.P. v. Schneider*, 533 F. Supp. 2d 345, 357 (S.D.N.Y. 2008) ("there can be no recovery of profits which would have been realized in the absence of fraud." (quoting *Lama Hldg. Co. v. Smith Barney Inc*., 88 N.Y.2d 413, 421 (1996)).[5]

## II.
## THE BREACH OF CONTRACT CLAIMS REMAIN DEFICIENT

The Opposition (like the Amended Complaint) fails to identify any provision of the ISDAs establishing that Citi (i) had a fiduciary duty to execute a trade at the best available price; (ii) was prohibited from charging a markup; or (iii) was obligated to disclose any markup on trades with Plaintiffs (or any counterparties).

---

[5]     This Court previously held that "[a]lthough the Plaintiffs seek to re-characterize their damages claims for 'lost profits' and 'lost opportunity to profit' as actual damages, in reality, the complaint only seeks lost profits."  Dismissal Decision at *9.  And, for the same reasons, Plaintiffs' contractual claims also are barred by the limitation of liability in the 2010 ISDA made applicable by its terms to all of Plaintiffs' trading pursuant to the ISDAs.  *See, e.g.*, Opening Br. at § II.B; *see also* Dismissal Decision at *11 ("the limitation of liability provision of the 2010 ISDA precludes exactly the losses that Plaintiffs seek and is fully enforceable").

In an effort to distort the parties' counterparty relationship, the Opposition attempts to recast Citi as Plaintiffs' broker or order-taker with "best execution" obligations. Opp. Br. at 1, 6, 10. The Opposition argues that the "terms" of parties' agreements "explicitly required execution at the best-available price and/or the market price." *Id.* at 6. Plaintiffs misconstrue the nature of the relationship and would suggest that Citi is their fiduciary. But the documents plainly state that Citi "is not acting as a fiduciary in respect of [Plaintiffs] and has no responsibility governing the conduct of fiduciaries or investment advisors as may be applicable to [Plaintiffs]" and that each party "is entering into this Agreement, including each Transaction, as principal and not as agent of any person or entity." *See, e.g.*, Slipp Decl. at Ex. A at Schedule Part 4(4)(a)(ix)-(x); *id.* at Ex. B at Schedule Part 3(g) and 4(4)(m)(h)(3)).

It is not surprising that Plaintiffs are unable to point to a contractual obligation of best execution as that is a concept that applies in the context of a broker-dealer relationship, not in connection with the arm's-length trading partner relationship here. *See, e.g.*, *Geman v. Sec. & Exch. Comm'n*, 334 F.3d 1183, 1186 n.4 (10th Cir. 2003) ("the duty of best execution is a legal duty inherent in the relationship of the broker-dealer and its customer, arising from the duties of undivided loyalty and reasonable care under the common law of agency").

Plaintiffs now allege that their orders could have been executed at prices "better" than what Plaintiffs requested (*see, e.g.*, Opp. Br. at 1). But this position cannot be reconciled with Plaintiffs' prior position that their orders were placed to execute "automatically" when the level price was reached in the market.[6] In fact, the new allegations demonstrate that those orders

---

[6]      Plaintiffs also cited to the Securities and Exchange Commission's website definition of "limit orders" (Dkt. No. 45 at 10 n.10) which states that a "limit order is an order to buy or sell a stock at a specific price or better. . . . <u>A limit order is not guaranteed to execute. A limit order can only be filled if the stock's market price reaches the limit price. While limit orders do not guarantee execution, they help ensure that an investor does not pay more than a pre-determined price for a stock.</u>" *Id.* (citing https://www.sec.gov/answers/limit.htm (emphasis added and last retrieved September 19, 2016)).

executed exactly as Plaintiffs requested.  Dismissal Decision at *6 ("The Complaint does not allege . . . that Plaintiffs did not receive exactly what they bargained for." (emphasis added)); *see, e.g.*, Opp. Br. at 1 (alleging that Plaintiffs' placed an order at 1.4785 and admitting that "Citibank filled the order at 1.4785.").

The Opposition also continues to press Plaintiffs' argument that individual trade "confirmations" (a necessary component of an "Agreement" under the ISDAs) are "unnecessary with respect to FX transactions."  Opp. Br. at 9.  But that argument also is foreclosed by this Court's findings that the individual trade "confirmations" (and not merely the ISDAs themselves) "form a single agreement between the parties."  Dismissal Decision at *2.

The Court already held that the "ISDA Agreements were not alone full agreements for any Foreign Exchange trade."  *Id.*  The Court reasoned, while "the ISDAs would govern certain elements of all trades between the parties, Plaintiffs and Defendant would still need to negotiate the essential terms of each individual trade."  *Id.*; *Wachovia Bank, N.A. v. VCG Special Opportunities Master Fund, Ltd.*, 661 F.3d 164, 167 (2d Cir. 2011) ("The ISDA Master Agreement provided that all of these Trade documents [including the 'Trade Confirmation'] would constitute a single agreement between VCG and Wachovia Bank."); *Barclays Bank Mexico, S.A. v. URBI*, 40 Misc. 3d 1212(A), at *4 (Sup. Ct. N.Y. Cty. 2013) (explaining that "no breach can be fully articulated without reference to the Confirmations"), *aff'd*, 114 A.D.3d 479 (1st Dep't 2014).  Plaintiffs' failure to include "information about specific trade confirmations with the required essential terms which have been violated" requires dismissal of their breach of contract claims.  Dismissal Decision at *10; *see also Wolff v. Rare Medium, Inc.*, 210 F. Supp. 2d

490, 494 (S.D.N.Y. 2002) ("a plaintiff must identify the specific provision of the contract that was breached as a result of the acts at issue"), *aff'd*, 65 F. App'x 736 (2d Cir. 2003).[7]

Finally, the Opposition's supposition that Plaintiffs' implied covenant of good faith and fair dealing claims are "not duplicative" of Plaintiffs' breach of contract claims (Opp. Br. at 14) is inaccurate. Plaintiffs' implied covenant claims do not rely on any facts distinct from the express breach of contract claims (*see* Am. Compl. at ¶¶ 160, 167) and, therefore, must be dismissed. *See, e.g.*, *Harris v. Provident Life & Accident Ins.*, 310 F.3d 73, 81 (2d Cir. 2002) ("New York law . . . does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled."). These "duplicative" implied covenant claims "will not stand." Dismissal Decision at *12-13.

## III.
## THE MARGIN CALL CLAIM IS BARRED BY THE ISDAs

The Opposition's argument that Plaintiffs' margin call claims (Am. Compl. at ¶¶ 167-75) are not barred by the ISDAs' dispute resolution provision (Opp. Br. at 12-14) virtually ignores the Dismissal Decision, misreads the ISDAs and misleads the Court with incomplete legal citation. Pursuant to the ISDAs, a party disputing the "value of any Eligible or Posted Credit Support must notify the other party by the close of business on the Local Business Day following the date on which the demand is made under Paragraph 3." Dismissal Decision at *12 (citing Slipp Decl. Ex. A at Amendment No. 3, p. 3 ¶ 5 and Ex. B at Credit Support Annex, p. 3 ¶ 5); *VCG Special Opp. Master Fund Ltd. v. Citibank, N.A.*, No. 08 Civ. 1563 (BSJ), 2009 WL

---

[7]     Nor does this common contractual framework — applicable in all counterparty relationships pursuant to ISDAs — create an illusory promise. Accordingly, Plaintiffs' reliance on *In re 114 Tenth Ave. Assoc. Inc.*, 441 B.R. 416 (S.D.N.Y. 2010) and *Strobe v. Netherland Co.*, 245 A.D. 573 (4th Dep't 1935) is misplaced. Those cases stand only for the unremarkable proposition that illusory promises are not enforceable. But nothing about the parties' counterparty relationship under the ISDAs was illusory.

311362, at *2 (S.D.N.Y. Jan. 29, 2009) ("Further, the Court found that VCG's complaints as to Citibank's demand for additional collateral failed on the independent ground that VCG did not invoke the dispute resolution procedures outlined in the CDS Contract, thereby surrendering any objections to the collateral demands.").[8]

Here, the Amended Complaint affirmatively alleges that Plaintiffs complied with the margin calls and did not dispute them. Am. Compl. ¶¶ 111, 118-23; Opp. Br. at 7. Accordingly, as the Court already held, it is an admitted fact that Plaintiffs <u>did not dispute</u> any margin calls pursuant to the terms of the ISDAs. In fact, the Court previously found that Plaintiffs did not even ask "for more information about how the margin calls were being calculated within the one business day window as required by the contract." Dismissal Decision at *13.

Moreover, Plaintiffs' citation to *Highland CDO Opportunity Master Fund v. Citibank*, No. 12-cv-2827(NRB), 2013 WL 1191895, at *7 (S.D.N.Y. Mar. 22, 2013) is misleading. On point is the subsequent summary judgment decision (which the Opposition fails to cite) that rejected the plaintiffs' margin call claim because the plaintiff — like the Plaintiffs concede here — had not disputed the margin calls by failing "to invoke the dispute resolution provision" in the governing agreements. *Highland CDO Opportunity Fund v. Citibank*, No. 12-cv-2727 (NRB), 2016 WL 1267781, at *13, *18 (S.D.N.Y. Mar. 30, 2016).

Accordingly, from the face of the Amended Complaint, Plaintiffs did not dispute the margin calls pursuant to the ISDAs (*see* Opening Br. at § III), thereby compelling dismissal of the margin call claims.

---

[8]     The ISDAs require that Plaintiffs dispute any margin calls in writing, delivered either in person or by certified or registered mail, and, in the case of the 2010 ISDA, by facsimile. Slipp Decl. Ex. A at § 12 and Schedule Part 5(5) (providing a street address and requiring that notice be delivered to the address in person or by certified or registered mail); *Id*. at § 12 and Schedule Part 4(a) (providing a street address and fax number and requiring that notice be delivered to the address in person, by certified mail, or by facsimile).

## CONCLUSION

Citibank respectfully requests that the Court dismiss the Amended Complaint, in its entirety, with prejudice, and without leave to amend.

Dated:  September 19, 2016          Respectfully submitted,
        New York, New York

                                    FRESHFIELDS BRUCKHAUS DERINGER US LLP

                                    /s/ Marshall H. Fishman
                                    Marshall H. Fishman
                                    Samuel J. Rubin
                                    601 Lexington Avenue
                                    New York, New York 10022
                                    Phone:  (212) 277-4000
                                    Fax:  (212) 277-4001
                                    marshall.fishman@freshfields.com
                                    samuel.rubin@freshfields.com

                                    *Attorneys for Citibank, N.A*